And we'll move to our fourth case this morning, Ewing v. Med-1 Solutions. All right, and we have both counsel here in the courtroom on this case. Whenever you're ready, Mr. Phillips, come on up. May it please the court, counsel, I'm David Phillips. I'm for the appellant here. Obviously, this is a consumer rights statute. And the first thing we have to address, as this court has repeatedly told us, is standing. And as we all know, the three elements of standing are invasion of a legally protected right, concrete and particular lies, and that's the biggest problem for all these consumer statutes, and an actual and imminent not conjectural injury. The Supreme Court in Ramirez said this boils down to what late Justice Scalia said is, what's it to you? Mr. Phillips, could I ask you to address the portion of transunion against Ramirez that found that a portion of that class did have standing? Right. So there was actually three parts of the class. There was people that were labeled terrorists, and they got their reports, and it went out to third parties. There were people that transunion labeled internally terrorists or on the OFAC list, but it never was externally given to anybody. No publication. No publication. And then footnote 7 is the donut hole that they never got to, which is people that are aware this has happened to them, but maybe it's not been published yet. And in this case, this actually happened. It was published to Ms. Webster. She knows it happened. In this case, there was publication to the credit bureaus, correct? Sure. The credit bureaus got it. And that part of the class in Ramirez was not required to come forward with anything more specific. That's correct, Judge. Now, in this case, and I'll have the same question with the next one, but are you seeking statutory damages or are you also seeking actual damages? The complaint asked for actual and statutory damages. I don't think the actual damages here are monumental, but I think there's some value to it. We never got to damages because that's tried to a jury in the FairDot cases, and no one actually moved for summary judgment on the damage issue. For concreteness, the issue is in kind, not degree. It doesn't mean that Ms. Webster had to have $1 million in damages or $1,000 in damages, had to have some damages. You know, under Ramirez, there's two kinds of recoveries you can get. For tangible, did you pay any money, were you beaten up, physical injury. It could also cover extreme emotional distress or emotional distress. It also covers intangible. I think this is more towards the intangible because, in this case, it isn't the regulatory kind of provisions of the FairDot Act that this court has, last year, routinely said, no, you don't have standing. And by I mean the regulatory portions, you should send someone notice that says this, you should do this, you should do that, where it didn't do anything to the actual consumer. This part of the statute, section 692E8, is not just regulatory. It's actually the elevation of part of the common law, the common law of fraud. This court recognized that in Evans versus Portfolio, where it said, quoting an old Eighth Circuit case, we're back to the Eighth Circuit in a different kind of case, that, look, when you're reporting something out, okay, it's common law of fraud not to include important material information. Important material information here would be. Do you want to rely more on fraud or on defamation? I think common law of fraud is closer here, but all those elements, defamation, I mean, that was the teaching, Ramirez. The Congress can elevate things that are similar to common law issues, fraud, invasion of seclusion, invasion of privacy, but you don't have to actually meet all those elements. That's the whole point of Congress wanting to be able to elevate things. Maybe you can't prove all the common law elements, but it's akin to that. Mr. Phillips, I'd like to go back to the publication question. The information here, I don't think it's disputed that the debt collector sent it to TransUnion, but is that enough for publication? And I'm referring in part to Footnote 6 in Ramirez's case, where there was a distinction between processed and read, and I don't think there's anything here establishing that TransUnion read this information. Does that matter? Well, I don't think it matters here because it's not TransUnion necessarily. It's Ms. Webster read it, and also we tried the case on damages, whether we could prove that other creditors read it. But publication, I don't think it matters about Ms. Webster. Publication would mean the person who's receiving it. Right, and Ms. Webster is one of the people who received it. The other people that received it are other creditors, which is what this court found in Evans. But you couldn't have defamation if Ms. Webster read it. Right. It would have to be the third party reading it. Right. Well, that's why I think it's common law fraud. It's being published to everybody in the world, and you're not telling people. And that was the case in Wilhelm v. Kretko. Common law fraud gets you into scienter requirements. I don't think you want a scienter requirement in this case, do you? Well, that's why you don't have to prove scienter, Judge. Congress has said, well, you can't necessarily prove all these elements of the common law, but this is similar to that. As long as it's similar to that, and this court has already said, not reporting that is disputed is akin to common law fraud. You cite it back to an old Eighth Circuit case, Wilhelm v. Kretko, and that's right. Wilhelm v. Kretko case and this court's decision in Evans are really dispositive. Ramirez didn't change the Evans case. Well, they're not at war. There's no real difference there. If a collector elects to report a debt, it can't, this is your quote, omit a piece of information that is always material, always material. But it did change Evans to the extent Evans stands for the proposition that the risk of future harm can satisfy a concrete injury requirement, didn't it? Sure, and there is a risk of future harm for this person, which is. . . But that can't, after Ramirez, that can't satisfy, that alone cannot satisfy the concrete injury. Wouldn't you agree with that? I agree with that, Judge. But here, she knows it. She's in the donor hole. She knows she's been harmed and doesn't know what's going to happen. That's footnote 7, and that's the decision that Ramirez specifically said, we're not going to decide that yet. But I think the risk of future harm is an intangible injury, besides the tangible injury of the impact to the credit report. Do you think we need to agree with you that that fear is enough in order to find standing? Or can we just focus on the publication to the credit bureaus? I'll take A, B, and C, Judge. You know that. I just need some standing. I don't need you to agree on everything. I think the impact to the credit report is tangible. Is it published? Are they fearful of it or not? Intangible. Can I go back to my question, please, Mr. Phillips? Sure. On publication, do we have to find that it was read by the third-party entity in order to find publication? If not, why not? I think it's useful, and I think in this case. But do we have to find it? No, you don't. And why not? What supports that? Because it was published to her. She got it. She read it. That's not going to solve your problem. Yeah. Let me make a suggestion along a somewhat different line. Sure. In footnote 6, the court's author cited an old New York court of appeals case that said a stenographer. You can publish defamation to a stenographer as long as the stenographer understands what's being said, right? Right. And we don't need an exact fit with the common law, right? Right. And TransUnion and its competitor credit reporting agencies exist to collect this information and disseminate it to potential creditors, right? Correct. And that's where Congress was worried that harm could occur, correct? Correct. Okay, thanks. And then just two points on the bona fide error, if I may. They admitted they had a 16.6% error rate on just one day, the day in question. The dispute came in. Well, five out of six, right? Five out of six. It's a 16% error rate, though, getting weirder one. This isn't a case where it came in and we're suing them because they missed it for a day. Or it came in and we're suing them because they missed it for a week. Or it came in and we're suing them because they missed it for a month. A procedure where it's gone into the netherworlds for two years and not found until it's sued upon is not a reasonable procedure. You can have the greatest procedures in the world, but if you put them on the shelf and you don't let people actually implement them or have any checks or balances, they're meaningless. Thank you for letting me exceed my time. Thank you very much. I'll be back. We know. Thank you, Mr. Phillips. Is it Levi? It is. Thank you. May it please the Court. Appellant Ewing's standing analysis is only addressing half of the question. She has to show both that there was a publication and a disclosure, but she also has to show that that publication in some way harmed her. Could you address the Ramirez group that had standing? Sure. Who made no such showing? You're talking about the smaller group in Ramirez where there was a third-party disclosure? Yes. And the Court held that there was standing. And again, the Court's decision on that was for those individuals who were flagged as drug traffickers, as terrorists, as clearly, to use the common law analog, defamatory communications, those individuals had standing because it had been disseminated outside of the Credit Bureau, but those individuals who simply had negative information in their page. Yes, I know that. But why aren't these plaintiffs, why isn't Ms. Ewing like the first group, because your client published that information to the credit agencies? Well, I think there are two issues. Number one is the question is the Court never addressed in Ramirez whether there was something, whether there was damage flowing from labeling someone as a drug trafficker. It said they had standing, right? Right. But if we go back, for example, Spokio is a Fair Credit Reporting Act case, and indisputably they used the example of providing false information such as a wrong zip code doesn't provide standing. And you think that's an apt comparison to failing to report a dispute given the provisions of E-8? We do, Your Honor. The position that we believe the Court has to take following both its own precedent and Supreme Court precedent is that this failure to mark as disputed must be something that causes a negative impact to the consumer. And there is no evidence in this record that it affects the FICO credit score. There is no evidence that anyone relies on that lack of information. And so we don't have to prove that it's innocuous as a zip code. The decisions are clear that it is the burden of the appellant to establish an injury in fact. Along those lines, I want to ask about the procedural setting of Ewing. Did you raise lack of standing in your summary judgment motion? I will confess, Your Honor, me personally, I was only involved as appellate counsel. I do not believe it was raised. It was not. Now, given that, if we were to find that there was a need, for example, to prove what I'm going to call fourth-party publication to creditors beyond the credit reporting agency, wouldn't we need to give plaintiff an opportunity to offer the evidence that she thinks she has? Particularly since this wasn't even before the district court. I would use plaintiff's own language from the underlying briefing that summary judgment is the put-up-or-shut-up moment, and she had the opportunity. Is your position, counsel, that if you move for summary judgment on the merits of your defense, that the plaintiff, upon pain of dismissal, must come forward with all evidence of standing? Is that really your position? Our position is that the plaintiff must establish at each stage of the litigation an injury in fact. That is not my question. If your motion doesn't raise the issue of standing, we have said time and again, a party opposing a motion for summary judgment is required to meet the arguments that are made, not arguments that could have been made and were not. That's this case, right? I would respond to that in three respects. Number one, subject matter jurisdiction is never waived. Number two, this is a peculiar situation in that at the time the district court handed down its summary judgment ruling and at the time the parties briefed, there was the Evans decision and Ramirez had not been decided by the Supreme Court. But you didn't raise those. I think that's the point. The question isn't about waiver of it. You didn't raise those, so Mr. Phillips didn't have any need to respond. So how would it be fair to say he doesn't get to develop the record on an issue that's raised for the first time on appeal? Well, I would argue this court has raised standing sua sponte without you saying that. Of course we do. But this is maybe, in part, an evidentiary dispute. And you all have your dueling footnotes about what's in the record and what's not in the record. And if that fourth-party publication is necessary, as you seem to think it is, how would it be fair not to give plaintiff a first opportunity to present that evidence to the district court? If the court is specifically referring to what I believe you're asking about, is that there is a dispute. Plaintiff has represented that certain things are contained within an exhibit that was not filed with the court. There are procedures for supplementing a record on appeal that were not filed. And none of that has any bearing if the issue wasn't raised in a way that called upon the plaintiff to present that evidence to the district court. We would, again, circle back, and we're only talking about the publication issue here. And if the court feels that fourth-party publication is the requirement and the plaintiff believes that there is evidence there, certainly the court in a fairness situation makes a valid point. But I would also submit that we're only talking about half of the question because merely showing that TransUnion provided some information to creditors doesn't show that it provided this specific information, and it doesn't show that this specific information in any way negates it. So you think for standing purposes, in constitutional standing purposes, we should distinguish between saying you're a terrorist and you're a deadbeat? No. There's no suggestion here that this was a Fair Credit Reporting Act dispute in which there were specific instances of this is why I'm disputing it and triggering an independent investigation. The statute simply says if a consumer disputes without providing facts and does so through a third party, that the data furnisher has to note that the consumer has logged a dispute when that information is submitted to the credit bureaus. There is no evidence in the record that the failure to mark that affects a FICO score. There is no evidence in the record, even if we assume that some information was provided to creditors. There is no evidence in the record because this was not presented in an evidentiary way. Can I ask you, Mr. Levi, another question? Is there any doubt that the statute authorizes these claims? You're talking about the FDCPA? For that standing. That you're making a purely constitutional argument, correct? Yes. The 1692E8 provides that the failure to note to a credit bureau that an account has been disputed is one of the categories that are, it's a non-exhaustive list, but it is specifically enumerated in that. I would note that this court has consistently held, dating well before any of the standing decisions that we're talking about, that there was a materiality requirement in 1692E. So I'm not conceding that it was material. Given the specification in E8 of disputes that that's material. Yes. We would argue that there absolutely is a dispute because materiality depends on context. This court has held for, dating back well over a decade, that confusion under 1692E doesn't apply to, for example, lawyers in the same. In general, that's correct. Right. This is an enumerated offense or enumerated violation of the statute. It is. It doesn't require that sort of second tier analysis about whether this is generically abusive or fraudulent activity. It's listed in the statute. So is there any question that this is a statutory violation? So is the requirement in the FCRA to provide a zip code that is accurate, but the Supreme Court said in Spokio the failure to do so does not necessarily confer standing. So certainly, yes, it's under the statute. And I recognize my time is running down. I would like to address the merits of the. Mr. Levy, I have one more question for you, please, along the publication lines. If publication to a, I'll use the same language Judge Hamilton was using, a fourth party is required here, do you agree that if the information appellants have identified in footnote one of their reply brief is accurate that they have established standing? No, and I believe footnote one is where they're referencing the credit report that it was provided to. It's evidence that third parties had viewed the transunion reports that had this information on it multiple times. All that would show is, and I haven't seen it, but my expectation is all that would show is that there were inquiries made by creditors to get some information from the credit files. Why wouldn't that be sufficient for standing? What else do you think we need? If those credit files and credit reports show the dispute here or show the debt and don't say that it's disputed and other creditors have actually looked at those credit reports, why wouldn't that satisfy you? Well, it doesn't establish that they looked at the credit reports. But that, he's, I asked you if they can establish what he has set forth in that footnote, and that's what he has said. If they can establish that, is that sufficient for standing? No, and if I can draw an example. If you were, if someone goes to an auto dealership and finances a vehicle and they run a credit check but all they ask for is the FICO credit score, that's going to be logged that they got information, but that's not going to establish that they actually received the 10-page report, that they reviewed it, and that the failure to mark an individual account as disputed. So you think you'd need testimony from the creditor saying, yeah, I got the report, I looked at this particular debt that worried me, and if it had said disputed, then I wouldn't have worried about it as much. No, I think in this context, with respect to standing, it would be enough for them to go back to TransUnion and say, what did you provide? And TransUnion should be able to say, this is the information we provided. That would be enough, you think? I would concede that if there were evidence in the record that TransUnion said, we provided the trade line from MedOne Solutions that failed to mark the account as disputed, that there would be standing. But merely looking at the credit report is not going to provide you that information. And so to circle back to the question of footnote one, merely showing that some information was provided to the creditors as noted is not going to establish that they received the information that's here. Again, my example is if you go to finance an auto loan and they simply check your FICO score and approve you, that's going to be logged the same way as if a home mortgage bank receives an entire 10-page credit report and goes through it line by line. And even if that some information is reviewing the TransUnion report that has this inaccurate information on it, that's not enough. Because that's what the footnote says. Exactly. And there is no evidence in this record that this had anything to do with FICO score. There's no evidence it had anything to do with any of the proprietary scores they sell. I apologize. Can I ask you? We're asking a lot of questions, and I've got at least one more. And that is I'd ask you to address this concept of standing against the background of the common law of defamation per se, in particular as it pertains to false statements about a person's creditworthiness. Well, number one, I don't believe this false statement has to do with the creditworthiness. All it says is the consumer disputes it, and they failed to log it. There is no allegation in the record that this debt was not owed. And I use your term not because I or my client use it, but the statement was made earlier that terrorists versus deadbeats. Obviously, that's a term we don't like, but there is no suggestion here that there was false information communicated that someone owed debt. You're trying to dodge the nature of the claim, which is a violation of the statute, actionable under the statute, for failing to report the dispute. The statute has that requirement in there for a reason. Your client, we must assume, violated it. How is that different from a common law claim for defamation per se by providing false information about a person's, in essence, honor in paying their debts? I would direct the court to the hypothetical from the Ramirez opinion, which I think is more similar. The hypothetical that Ramirez used was an individual on an interstate, and you have a car that's weaving back and forth recklessly. And they said that until there is an accident, that it is this risk of harm. To your question, in this situation, I would respond that this is not within the categories of per se defamation and would be more analogous to the tort, such as a negligence claim, which is you have to show not just duty and breach, but that there was some type of an injury that was caused by that. In this situation, the failure to report a disputed account as disputed does not necessarily, and we would argue on this record it does not at all in this case, establish that you are saying this individual is unable to pay their debts or this individual is unable. What it says is they have disputed this account, and that is marked on the bill. Which is very different from just saying they owe us this money and they're not paying it, right? I would argue that it is. It is different, that they have reported. Yes, that's the difference, and that's why it's actionable, why the failure to report a dispute is actionable under the statute. Maybe I'm missing something. I agree that the communication here is that with no evidence provided, with no basis for that in the standard attorney representation letter, Ms. Ewing said we dispute the debt, which triggers an obligation to mark the account as disputed. The failure to mark the account as disputed in our position does not bring this within a per se defamation category, and I apologize, I have to go back to tort law, but the four categories of defamation per se would not extend to that this consumer has logged a dispute. We are still reporting the debt. There are ways that a consumer can make a dispute under the FCRA, which puts an affirmative obligation on the data furnisher to perform a reasonable investigation. To cure your client's mistake, right? They did not trigger an obligation to perform a reasonable investigation, and the record establishes in this case that had a reasonable investigation been performed, the debt was owed. So we would submit that this, again, back to what we've been saying, it's not just publication, it's publication, and that the information would have some negative impact on the consumer's credit profile, and recognizing, as the court has stated that that's contained specifically in the statute, we would direct and circle back around to the language in the majority opinion in Spokio where they said, even though the FCRA says it's a violation to report certain things inaccurately, you're still going to have to tie that to a concrete harm. So you're back to the zip code? A little different than the zip code situation. It is a little different than the zip code, but the difference is the record is no different in this case than the zip code because there is no information in the record. Because no record was developed on this. But we're going in circles. Okay, thank you. Thank you. Thank you very much. Mr. Phillips, your time has expired. Do you have anything else to say on Ms. Ewing's case? Please, and then we'll have you come back up for the next case. Well, the next case will be ditto with some explanation. Okay. The one point I want to address is the FCRA claim. This court in Evans rejected that, that somehow these disputes have to rise to the level of FCRA. It's two different statutes, two different things. She did a dispute which required them to do one of several things. They could have either stopped reporting the debt, they could have marked it as disputed, or they could have quit updating the debt. They failed to do any of those three things. Thank you. All right, thanks very much. Our thanks to both counsel. The case is taken under advisement.